**UNITED STATES of America**

v.

**Garnett BOWLES, Appellant.**

**No. 14398.**

United States Court of Appeals Third Circuit.

Argued Jan. 20, 1964.

Decided May 15, 1964.

Rehearing Denied July 23, 1964.

See 334 F.2d 325.

---

* Of the Ninth Circuit, sitting by designation.

Daniel J. Moore, Newark, N. J., for appellant.

J. Norris Harding, Asst. U. S. Atty., Newark, N. J., for appellee.

Before BIGGS, Chief Judge, and FORMAN and GANEY, Circuit Judges.

BIGGS, Chief Judge.

The following appears in the record in this case tried with a jury in the court below. The single-count indictment charged the defendant-appellant, Garnett

Bowles, as follows: "That [he] on or about the 27th day of September, 1962, at East Orange, in the State and District of New Jersey, * * * an alien and citizen of Canada, was found in the United States, after he had been previously arrested and deported from the United States, on July 14, 1953, October 17, 1958, and September 4, 1962. In violation of Section 1326, Title 8 U.S.C." He was found guilty as charged and has appealed.

On February 6, 1951 a warrant for the deportation of Bowles was issued by the District Director of the Buffalo District of the Immigration and Naturalization Service, the warrant commanding that he be deported to Canada. The provisions of the laws of the United States under which the deportation was ordered have been covered up by a piece of cardboard placed on the warrant and do not appear. The back of the warrant is also covered with a smaller piece of cardboard and shows, contradictorily, that it was executed via the Peace Bridge at Buffalo, New York, on August 9, 1951 and also via the Peace Bridge on July 14, 1953.[1]

On the 15th day of February 1957 another warrant was issued by Edward J. Shaughnessy, District Director of the New York District of the Immigration and Naturalization Service, ordering Bowles' deportation. The provisions of the laws of the United States under which the deportation was ordered also have been covered up in this warrant by a piece of cardboard placed on the warrant and do not appear. The back of the warrant shows that it was executed at the Port of New York on October 17, 1958.

Another deportation warrant was issued on January 5, 1961 by P. A. Esperdy, District Director of the New York District of the Immigration and Naturalization Service, and shows on its face that Bowles was subject to deportation under "Section 241(a) (1) of the Immigration and Nationality Act, in that, at time of entry * * * [he was] within one or more of the classes of aliens excludable by the law existing at the time of such entry, to wit, aliens who have been arrested and deported, consent to apply or reapply for admission not having been granted by the proper authority under sec. 212(a) (17) of the Act." The back of this warrant shows that it was executed on September 4, 1962 at the Port of New York.

The warrants referred to were introduced in evidence by the United States.

There were also introduced in evidence certificates of the non-existence of any record of the Immigration and Naturalization Service showing that Bowles had been naturalized as a citizen of the United States and also a certificate of non-existence of any record showing that he had made any application for permission to reapply for admission into the United States or that any permission for reentry had been granted him after deportation from the United States. Also included in the evidence is a photostatic copy of a birth certificate showing that Garnet Jesse Bowles was born in Canada in 1920.

The record includes as well a duplicate petition for naturalization signed and executed by Bowles under the name of "Garnett J. Bowles, Sr." which recites his nationality as "British" and states that his last place of foreign residence was Owen Sound, Ontario, and that he entered the United States on September 8, 1920. It also recites that he was inducted into the United States Army on April 16, 1943, at Cleveland, Ohio, and was honorably discharged on January 14, 1944.[2]

At the trial the Government proved that on September 27, 1962 when Bowles

---

1. Whether there was a second execution of a single warrant nearly two years after its first execution and whether or not it was *functus officio* at the time of the second execution is a matter which we cannot determine on this record. This question may be inquired into on remand.

2. The record does not contain any decision of a Special Inquiry Officer but a decision of a Special Inquiry Officer dated November 15, 1962 is attached to the notice of appeal filed in this court. We cannot treat this as part of the record since it was not before the court below.

was apprehended in East Orange, New Jersey, he admitted that he was born in Owen Sound, Ontario, Canada, that the date of his birth was June 8, 1920, and that his name was Garnett [3] Bowles.

The United States also proved through Deportation Officer Santasiero that he deported Jesse Bowles to Canada on October 17, 1958 by placing him on a Trans-Canada Airlines plane which departed from the Port of New York with Bowles on board. Deportation Officer Anderson testified that he deported Bowles to Canada from the Port of New York on September 4, 1962 by placing him on a Trans-Canada Airlines plane, flight 207, and that he saw the plane take off and it did not return to the airport.

It appears from the record that the covering of portions of the deportation warrants by pieces of cardboard, referred to in the second and third paragraphs of this opinion, was done by direction of the trial judge at the request of Bowles' attorney, it being then and now the position of Bowles that he was entitled to attack the deportation orders and warrants collaterally. It will be remembered that the typewritten provisions of the Immigration and Nationality Act under which Bowles was deported were not covered up in the deportation warrant issued on January 5, 1961 and referred to in the fourth paragraph of this opinion.

At the close of the evidence Bowles made a motion for judgment of acquittal pursuant to Rule 29, Fed.R.Crim.Proc., 18 U.S.C. His counsel, appointed by the court below, stated Bowles' position as follows: "The government has failed to establish guilt at any point. That the *original* deportation we contend was unlawful and we believe until they show

that the original deportation was lawful and valid that these repeated entries would be vitiated if the *initial* deportation was invalid." (Emphasis added.)

The court then said: "In other words, is it your legal position, * * * that if a person came into this country and then it was alleged that he was either in this country illegally or he had committed some act that made him subject to deportation, he is given a hearing thereon, let us say for example it possibly took a month or six weeks to try and then after all the appropriate appeals and legal procedure, legal and administrative procedure he was deported, each time he would come back illegally in this country and the Government would bring a charge of being here illegally and attempt to deport him, that they would have to open the original hearing and conduct it all over again and put it into issue as to whether or not he was legally deportable?" Counsel for Bowles replied: "No, I do not say that, your Honor." The court then asked: "Well that is the effect of your motion, is it not?" Bowles' counsel then said: "No, your Honor, we are assuming the lawfulness and validity [*sic* [4]] of the original deportation." The court replied: "Then I disagree with you." The trial judge denied the motion for judgment of acquittal.

Bowles then took the witness stand. He testified that he had been deported first on August 9, 1951 because he had been convicted of a crime involving moral turpitude in "Baltimore" on April 24, 1943.[5] He stated that he was "kidnapped" before he could prosecute an appeal [6] and was taken to Canada.[7] At this point in the trial, Bowles' counsel offered "Exhibit D–2" for identification. This

---

3. It is not clear from the record whether the defendant's first name is spelled with one "t" or with two.

4. We believe that counsel misstated what he meant to say. He meant "Assuming the unlawfulness and invalidity of the original deportation". The text as a whole, demonstrates, we think, that this is the correct interpretation of counsel's whole sentence.

5. This deportation apparently was the first suffered by Bowles. See note 11 infra.

6. It is probable that Bowles was referring inaccurately to a habeas corpus proceeding brought by him to test the validity of the deportation order. See note 11 infra.

7. The appeal referred to was apparently one taken to the Sixth Circuit Court of Appeals from an order denying Bowles habeas corpus. See note 11 infra.

appeal was a document offered to prove Bowles' conviction or convictions of a crime or crimes involving moral turpitude in the Municipal Court in Cleveland, Ohio, not in Baltimore.[8] His counsel stated to Bowles: "This exhibit indicates you were convicted of a crime of larceny by trial?"[9,10] He replied: "Yes." He was asked again: "Were you so convicted?" he replied: "Yes, I was."

Bowles went on to state that the information filed in the Municipal Court indicated that he was convicted on April 24, 1943 but that on that day he was in "Fort Benjamin Harrison in Indiana". He testified from a photostatic copy of his honorable discharge from the United States Army that the date of his entry in the service was April 16, 1943 and the date of active service commenced on April 23, 1943. We state, parenthetically, that the first date is in accord with Bowles' sworn petition for naturalization hereinbefore referred to.

At this point counsel for the United States intervened and said that he would object. The court then asked Bowles' counsel what was the purpose of the offer which was apparently about to be made of the photostatic copy of Bowles' certificate of honorable discharge from the United States Army. The court asked Bowles' counsel as to the thrust of his proposed collateral attack, saying, "On what? The original deportation?" The court re-

fused to allow the proposed collateral attack which to some extent, at least, was based on the theory that Bowles could not be guilty and convicted of a crime against civil authorities while in the Army and also, though this ground is far from clear, apparently on the fact that the certificate of the Municipal Court showing Bowles' conviction or convictions placed him in court for a hearing on April 24, 1943 while he was elsewhere on duty in the army. At any rate the court stated to Bowles' counsel that he was attempting to open the door to collateral attack on the original deportation order and that he would not allow this. He overruled the offer of proof and gave Bowles an exception.

Later the court stated to Bowles' counsel: "Let the record reflect that you have made an offer to introduce evidence and collaterally attack the original deportation hearing, that for the reasons stated at the time of the motion that avenue has been closed to you. You have on the record a continuing offer to admit such testimony, a continuing foreclosure to you of that avenue and a continuing exception * * *."

■ Bowles admitted that he had been deported to Canada on July 14, 1953, on August 9, 1951, on October 17, 1958, and on September 4, 1962 and that he had never applied for or been granted a reentry permit.[11]

---

8. Unfortunately, "Exhibit D–2", though marked for identification, was never received in evidence.

9. We think that the word "trial" as it appears in the transcript should be "trick", i. e., that Bowles perhaps was convicted of the crime of "larceny by trick".

10. Unfortunately we do not have in the record any of the proceedings of the Immigration and Naturalization Service authorities in respect to Bowles. See note 2 supra.

11. In his brief in this court the appellant has no statement of facts. The brief of the United States contains what is described as a "Counter Statement of the Facts". This consists of approximately six printed pages. Most of what is in the "Counter Statement of Facts" is not

in the record. We have repeatedly stated that we cannot treat statements made by counsel in their briefs as evidence. But we think it necessary to give a résumé in this footnote of the statements so frankly make by the United States in its brief since what is said therein is pertinent to an understanding of the case at bar as a whole. It is to be understood that we treat these statements, not as facts, but as background and except as they individually appear in the record they are to be considered as such. We sum up the "Counter Statement of the Facts" as follows:

The appellant, Bowles, while imprisoned at the Ohio State Reformatory at Mansfield, Ohio, on state criminal charges, on August 2, 1950 was given his first, his original, deportation hearing by the Immigration and Naturalization Service

Title 8 U.S.C. § 1326 provides in pertinent part: "Any alien who—(1) has been arrested and deported or excluded and deported, and thereafter (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior

on charges that in December 1943 he entered the United States as an immigrant without possessing a valid immigration visa and prior to the time of his entry he had been convicted of a crime involving moral turpitude; viz., receiving stolen property. On August 2, 1950 Bowles entered into a stipulation which recited that on April 24, 1943 in a criminal proceeding at No. 208479 in the Municipal Court of Cleveland, Ohio he had been found guilty as charged and had been sentenced on those judgments of conviction. The stipulation also recited that Bowles had last entered the United States at Blaine, Washington in December 1943. Predicating his action on this stipulation, the Hearing Officer recommended that Bowles be deported to Canada. On October 26, 1950 Assistant-Commissioner Devaney adopted the Hearing Officer's recommendation and ordered Bowles' deportation. Bowles then wrote a letter to the Immigration and Naturalization Service stating that when he entered the United States, allegedly illegally, at Blaine, Washington in December 1943, he was under military orders by virtue of his service in the United States Army; in other words, that he had entered the United States on that occasion pursuant to a military order. On November 8, 1950, the Commissioner ordered that the order of deportation be rescinded and that the hearing be reopened.

Prior to November 8, 1950 Bowles filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Ohio, at its No. 27846. Bowles was represented by counsel of his own choosing. There was a hearing and after briefing, the petition was dismissed by Judge Freed.

On January 3, 1951 the deportation hearing was reopened in Cleveland, Ohio and Bowles was represented in that proceeding by the same counsel who had appeared for him when he sought habeas corpus as we have stated. Bowles admitted during the renewed deportation hearing that he had been inducted into the United States Army at Cleveland and also that he subsequently served tours of duty at Fort Benjamin Harrison in Indiana and at Fort Lewis in Washington. He stated that in late November or December, 1943, while stationed at Fort Lewis, he had obtained a three day pass and voluntarily had gone to Canada on a holiday. Bowles admitted that when he entered and left Canada he was not under

military orders to travel in Canada. On January 9, 1951 Hearing Officer Arthur J. Loveland recommended that Bowles be deported to Canada for the reasons that when Bowles entered the United States in December 1943, he did not have a valid immigration visa and he had been convicted of a crime involving moral turpitude at Cleveland, Ohio on April 24, 1943, prior to his last entry at Blaine, Washington. On February 6, 1951 Assistant-Commissioner Devaney modified the Hearing Officer's recommendation as to Bowles and ordered his deportation solely on the ground that he had been convicted of a crime involving moral turpitude prior to his entry in December 1943. On the same day a writ of deportation was issued. Bowles then appealed to the Board of Immigration Appeals. The Board denied the appeal on April 4, 1951.

On April 13, 1951 Bowles obtained an order from Judge McNamee of the United States District Court for the Northern District of Ohio restraining the execution of the deportation warrant. He then filed a petition for review of the deportation order in the Northern District of Ohio under the Administrative Procedure Act, 5 U.S.C.A. §§ 1001–1011. In his moving papers Bowles again admitted his conviction in the Cleveland Municipal Court. The case was not adjudicated for prior to any decision counsel for the parties entered into a stipulation pursuant to which Bowles' petition was dismissed.

On May 22 Bowles filed an application for a writ of habeas corpus in the United States District Court for the Northern District of Ohio at its No. 28,232. Judge McNamee granted a hearing on this petition and the writ was discharged. An appeal was taken to the United States Court of Appeals for the Sixth Circuit. This appeal also was dismissed on a stipulation by counsel. On August 1, 1951 Bowles applied *pro se* for a writ of habeas corpus to Chief Judge Jones of the United States District Court for the Northern District of Ohio. This application was denied by Judge Jones on the ground that no new basis for the writ had been presented which had not been adjudicated previously on the three prior applications for habeas corpus and the petition for review.

On August 9, 1951 Bowles was deported to Canada. Apparently, also acting *pro se* at some time prior to August 9, he filed an application for habeas corpus to the United States Court of Appeals for

to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be guilty of a felony * * *."

Bowles asserts here, as in the court below, that he is entitled to attack the deportations collaterally. The Government contends first that Bowles is collaterally estopped from attacking any of the deportations shown in the indictment. Bowles, of course, asserts the contrary.

From the material appearing in footnote 11 it may have been that Bow-

les did attack the validity of the original order of deportation by his application for a writ of habeas corpus in the United States District Court for the Northern District of Ohio at its No. 28,232, where, as will have been noted, the petition was dismissed after hearing and an appeal was taken by Bowles to the Court of Appeals for the Sixth Circuit, an appeal which was subsequently dismissed upon stipulation of counsel. But these matters are not in the record. Moreover, assuming *arguendo* that Bowles has admitted that he was found guilty of the crime or crimes of larceny by trick and of receiving stolen goods in the Municipal Court in Cleveland (a point which is not clear on the present record) it does not appear that the United States District Court for the Northern District of Ohio passed upon the other issue involved, that of "en-

the Sixth Circuit. Chief Judge Hicks denied this application.

In October 1952 Bowles again re-entered the United States and after detection and a deportation hearing, he was again ordered deported on January 26, 1953. Bowles appealed the deportation order to the Board of Immigration Appeals which entered an order dismissing the appeal. On April 28, 1953 a grand jury of the United States District Court for the Western District of New York indicted him, charging him with re-entry as a deported alien in violation of 8 U.S.C. § 180. Bowles was found guilty, was sentenced to a term of two years and was placed on probation for two years with the provision that he should not again return to the United States. On July 14, 1953 he was deported again.

On January 4, 1957 Bowles was found in New York City and on February 15 he was given another deportation hearing. On that day another warrant for his deportation was ordered. On March 6, 1957 Bowles was indicted for violation of 8 U.S.C. § 1326 for entry as a deported alien. He pleaded guilty and was sentenced to six months imprisonment. He petitioned the Supreme Court for a writ of certiorari. This was denied, 358 U.S. 846, 79 S.Ct. 71, 3 L.Ed.2d 80 (1958). On October 17, 1958 Bowles was again deported to Canada.

On December 21, 1960 Bowles was again found in New York City. The following day he was given a deportation

hearing and ordered deported. He was again indicted for violation of 8 U.S.C. § 1326. He waived a jury trial and was found guilty by Judge Kaufman of the United States District Court for the Southern District of New York. He was sentenced to imprisonment for a term of two years. Upon completion of this sentence he was again deported to Canada on September 4, 1962.

On September 7, 1962 Bowles again entered the United States through the City of Niagara Falls. He was apprehended in East Orange, New Jersey. He received deportation hearings in Jersey City, New Jersey, on October 1, 19, 24, and 26, 1962, and was ordered deported on November 5, 1962.

Meanwhile, on October 10, 1962, as shown in part in the body of this opinion, Bowles had been indicted by the grand jury for the United States District Court for the District of New Jersey for violation of 8 U.S.C. § 1326. On December 19 the grand jury superseded this indictment by correcting certain dates relating to previous deportations. Bowles had a jury trial, was found guilty, and was sentenced to imprisonment for two years but was put on probation subject to the condition that he would not return to the United States except by legal entry. It is from this judgment that the appeal at bar was taken. Bowles has remained in the United States pending the disposition of the appeal.

try".[12] We therefore think it is clear that no basis for collateral estoppel has been demonstrated here and that the burden was upon the Government to demonstrate it. Certainly in a criminal proceeding, assuming *arguendo* that collateral estoppel may arise in certain circumstances against the defendant, for the doctrine to be applicable the disputed issue must be shown to have been actually adjudicated. We therefore cannot agree that the doctrine of collateral estoppel or res judicata is applicable in the case on the instant record. See Anselmo v. Hardin, 253 F.2d 165 (3 Cir. 1958). Concerning what might appear on remand in respect to this issue upon a more complete record we, of course, cannot and do not express an opinion.

The second point raised by the Government, to which Bowles makes no specific answer, is that Section 1326 must be treated like a broad arrow statute, *i. e.*, it is sufficient to show simply that Bowles was "deported"; that in effect one cannot go behind the quoted word and that any testimony offered, except that which would show that he was not "deported", is irrelevant. We deal with this point generally hereinafter.

The crime charged in the indictment in the case at bar consists of two elements: (1) that the accused alien is found in the United States without the express consent of the Attorney General, and (2) that he has previously been deported. It is conceded that Bowles was found in the United States after he had been "deported". It is not conceded, as we understand it, that he was required to obtain the consent of the Attorney General for his entry after his "deportation" or "deportations". We believe that it is implicit in Bowles' position that if he was illegally deported he does not have to have the consent of the Attorney General in order to avoid the impact of the statute. He testified that he had no consent from the Attorney General. Back of a deportation lies the deportation warrant and back of the deportation warrant lies an order of deportation which in turn is bottomed upon a deportation proceeding held in accordance with law. When Congress made use of the word "deported" in the statute, it meant "deported according to law".

It is not clear from the record nor is it apparent even if we attempt to supplement the record by statements made in the "Counter Statement of the Facts" whether any of the three deportations designated in the indictment stand on separate bottoms. It seems to be the sense of the parties as expressed in their briefs and on oral argument that each succeeding deportation was based upon the first, that which occurred when Bowles was deported via the Peace Bridge at Buffalo on August 9, 1951.

The court below permitted Bowles to be examined and cross-examined as to his conviction of a crime or crimes involving moral turpitude. It follows, therefore, that the trial judge did to some extent permit a collateral attack on the deportations specified in the indictment. But, as we have pointed out, it is not clear on the present record whether Bowles was convicted of the crime of larceny by trick or the crime of receiving stolen goods or of both crimes by the Municipal Court at Cleveland.

A serious constitutional issue might be presented under certain circumstances but insofar as we can see none is present nor do any lurk in the case at bar at least under the interpretation which we have put upon the statute as will appear hereinafter.[13]

12. Habeas corpus was the appropriate remedy under § 19(a) of the Immigration Act of 1917, 39 Stat. 889. See Heikkila v. Barber, 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972 (1953).

13. Such an issue was before the Supreme Court in United States v. Spector, 343 U.S. 169, 172, 72 S.Ct. 591, 96 L.Ed. 863 (1952) but was not passed upon because the constitutional issue was not raised by the appellee nor briefed nor argued in the Supreme Court. Cf. United States v. Heikkinen, 240 F.2d 94 (7 Cir. 1957), reversed on other grounds, 355 U.S. 273, 276, 78 S.Ct. 299, 2 L.Ed.2d 264 (1958).

■■ In our opinion an order of deportation may be attacked in a criminal proceeding such as that at bar on at least two fundamental and limited grounds.[14] The first is that there is no basis in fact for the Board's conclusion in respect to deportability. The applicable test in this regard is as follows: "[W]hen a court finds a basis in the [board's] file for the board's action that action is conclusive. The question of the preponderance of evidence is not for trial anew. It is not relevant to the issue of the guilt of the accused for disobedience of orders. Upon the judge's determination that the file supports the board, nothing in the file is pertinent to any issue proper for jury consideration." Cox v. United States, 332 U.S. 442, 453, 68 S.Ct. 115, 120, 92 L. Ed. 59 (1947). See the authorities contained in note 5 cited to the text. See Estep v. United States, 327 U.S. 114, 121–125, 66 S.Ct. 423, 90 L.Ed. 567 (1946). See also Davis, Administrative Law Treatise, Vol. 1 § 8.16 at 596–97.

■ The second ground for attack on a deportation order in a case such as that at bar is that there is no warrant in law for its issuance. This issue also is one for resolution by the court. In the instant case a question is presented in this respect by Bowles' re-entry into the United States from Canada in 1943 following the issuance of a three-day pass to him while he was in the United States Army. See note 11 supra. Apparently the only grounds upon which Bowles' original deportation rested or indeed could have rested, was that he had been convicted of a crime involving moral turpitude *prior to this entry*. While we decline to speculate on matters not in the record and point out that in all respects the facts are to be considered *de novo* on remand, nevertheless we deem it appropriate to emphasize that the word "entry" as used in Section 101(a) (13) of the Immigration and Nationality Act of 1952 [15] has not been given a literal interpretation but has been construed as a term of art.[16] See Rosenberg v. Fleuti, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963).

The judgment of conviction will be reversed and a new trial will be ordered with directions to proceed as indicated in this opinion.

14. The United States Court of Appeals for the Tenth Circuit in Arriaga-Ramirez v. United States, 325 F.2d 857, 859–860 (1963), a case substantially similar to that at bar, held that a deportation order could not be attacked collaterally. But United States v. Heikkinen, supra, note 13, held that an alien was entitled to attack the validity of an order deporting him in a criminal proceeding based on Section 20(c) of the Immigration Act of 1917, as amended, 64 Stat. 1010 (1950). True, the charge in Heikkinen was wilful failure to depart from the United States and wilful failure to make timely application in good faith for necessary travel documents. Although § 1326 of 8 U.S.C. under which Bowles was found guilty does not use the word "wilful" or any similar term, nonetheless it makes a violation of its provisions a felony and we cannot assume that the omission of such a term as that referred to is of great import. We have found no legislative history pertinent to this issue.

15. It is possible that the word "entry" as used in Section 155, 8 U.S.C. (1940 Ed.),

54 Stat. 671, has the same connotation as that given it by Mr. Justice Goldberg in Rosenberg v. Fleuti, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000. See Section 101(a) (13) of the Immigration and Nationality Act of 1952, 66 Stat. 167, 8 U.S.C. § 1101(a) (13). This is also a question to be determined by the court below on remand.

16. If statements contained in note 11 supra be correct, Bowles made a brief visit to Canada which, while more than a couple of hours' duration, did not exceed three days. It may be surmised that it was less because he was required to leave and return to his military base within the United States on a military pass which entitled him to three days only. This was a short visit. He was not required to go to Canada but probably he was required to return by military regulations and if he had failed to return he would have been derelict in his duty and AWOL.