**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jose Julio GONZALEZ-PARRA,
Defendant-Appellant.**

**No. 29018.**

United States Court of Appeals,
Fifth Circuit.

Feb. 4, 1971.

As Modified on Denial of Rehearing
March 5, 1971.

Abraham H. Shukat, Miami Beach, Fla. (Court-appointed), for defendant-appellant.

Robert W. Rust, U. S. Atty., Jose E. Martinez, Richard A. Hauser, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before THORNBERRY, AINSWORTH and GOLDBERG, Circuit Judges.

AINSWORTH, Circuit Judge:

Jose Julio Gonzalez-Parra, also known as Lenin Alarcon-Corrales, was indicted and convicted under 8 U.S.C. § 1326 [1] as an alien who, having been arrested and deported, reentered the United States without the express consent of the Attorney General. From this conviction he appeals, alleging that in the proceedings below he was denied due process and that his Sixth Amendment right to a jury trial was infringed. We affirm.

The appellant, a native of Costa Rica, entered the United States at Miami on January 18, 1968, as Jose Julio Gonzalez-Parra. His visa authorized·him to remain as a nonimmigrant visitor until October 7, 1968. On November 1, 1968, officials of the Immigration and Naturalization Service (I&NS) took him into custody in New York. A hearing was held before a Special Inquiry Officer of the I&NS to determine whether appellant should be deported pursuant to 8 U.S.C. § 1251(a) (2). [2] Appellant was represented by retained counsel at the hearing, had an interpreter present, and testified on his own behalf. He pled no defenses and offered no evidence that he had a right to remain in the United States. His counsel asked permission for him to depart voluntarily, but shortly thereafter withdrew the request. The Special Inquiry Officer thereupon ordered appellant deported to Costa Rica. Appellant expressly waived his right of appeal, and left the United States for Costa Rica by plane on November 7, 1968.

On or about December 13, 1968, the appellant reentered this country at Miami under the name Lenin Alarcon-Corrales, which he now contends is his real name. He was once again taken into custody by the I&NS, and on September 17, 1969, was indicted for violation of 8 U.S.C. § 1326. He pled not guilty and, through counsel, moved to dismiss the indictment on the ground that Section 1326 is unconstitutional on its face, in that it imposes criminal punishment on an alien for defiance of a deportation order without affording him a trial de novo of the facts on which the validity of the order depends. The District Judge denied the motion to dismiss. He inspected the record of the original deportation proceedings, and found that

---

[1] 8 U.S.C. § 1326 provides:
Any alien who—
(1) has been arrested and deported or excluded and deported, and thereafter
(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both.

2. 8 U.S.C. § 1251 provides in pertinent part:
(a) Any alien in the United States * * * shall, upon the order of the Attorney General, be deported, who—
* * * * *
(2) entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this chapter or in violation of any other law of the United States * * *.

the Special Inquiry Officer had "substantial grounds" for ordering the appellant deported and that no basis was disclosed for invalidating the order. The appellant thereupon withdrew his original plea and entered a plea of guilty. The District Judge adjudged him guilty as charged and, in response to appellant's request that he be sentenced without further delay, sentenced him to the custody of the Attorney General for 60 days (with credit for time in custody prior to trial) pending deportation anew.

Appellant contends that he should never have been deported in the first place. He concedes that he entered the United States on a nonimmigrant visa and that he stayed beyond the period permitted. He alleges that he obtained the visa by giving a false name and by misrepresenting himself as a visitor when in fact he intended to make his living here, and that at all times pertinent herein, his mother has lived in Miami Beach, Florida, as a permanent resident alien. In consequence, he contends, the I&NS erred when it deported him pursuant to 8 U.S.C. § 1251(a) (2), because in so doing it ignored the provisions of Section 1251(f), which reads in pertinent part:

> The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to alien otherwise admissible at the time of entry who is the * * * child of * * * an alien lawfully admitted for permanent residence.

Appellant did not make these contentions at the I&NS proceedings, and though the District Judge entertained argument on both sides, he confined his ruling to the formal record of those proceedings. The question on appeal is whether a jury trial de novo on these contentions is a constitutional prerequisite to the conviction of appellant for unlawful reentry.

 We face at the outset the question whether, by his guilty plea, appellant waived the right of appeal on the issue of the constitutionality of 8 U.S.C. § 1326. We hold that he did not. It is well established in this Circuit that a guilty plea, if voluntarily and understandingly made, admits all facts charged and waives all non-jurisdictional defects in the prior proceedings against him. See Busby v. Holman, 5 Cir., 1966, 356 F.2d 75, 77; Moore v. United States, 5 Cir., 1970, 425 F.2d 1290, 1291, and cases cited therein. The Supreme Court has declared, however, that where a defendant moves to dismiss an indictment on the ground that the statute he is charged with having violated is unconstitutional, and the Trial Judge denies the motion to dismiss, the defendant may plead guilty and yet preserve the constitutional issue for appeal. Haynes v. United States, 390 U.S. 85, 86–87 n. 2, 88 S.Ct. 722, 724–725 n. 2, 19 L.Ed.2d 923 (1968). The *Haynes* rule permits a defendant to preserve for appeal a narrow class of constitutional questions that the Trial Court has resolved against him "without being required to go through a futile trial on the merits." 1 C. Wright, Federal Practice and Procedure § 175 at 381 (1969); cf. United States ex rel. Rogers v. Warden of Attica State Prison, 2 Cir., 1967, 381 F.2d 209, 214. In the instant case the appellant made it clear that, while he conceded that he had been deported and had reentered without express authorization, he did not concede the validity of the deportation order; and that he pleaded guilty and waived jury trial on the general issue only because the Trial Judge's ruling that he was not entitled to jury trial de novo on the merits of the deportation order left him with "no fact left to try."[3]

3. The Trial Judge understood the defendant to have preserved the constitutional

issue for appeal. At the close of the proceedings, in the presence of counsel for

We think it clear that Congress intended to bar collateral attacks on deportation orders in prosecutions under 8 U.S.C. § 1326. Section 1105a of 8 U.S. C., enacted in 1961 as Section 106a of the Immigration and Nationality Act, sets forth a comprehensive scheme for judicial review of deportation orders. See generally Note, Deportation and Exclusion: A Continuing Dialogue Between Congress and the Courts, 71 Yale L.Rev. 760 (1962). Section 1105a(c) provides that "An order of deportation * * * shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations or if he has departed from the United States after the issuance of the order." Any alien ordered deported pursuant to the decision of an I&NS Special Inquiry Officer has an administrative remedy available as of right in the form of an appeal to the Board of Immigration Appeals. 8 C.F. R. § 242.21 (1970). A deportee who takes this administrative appeal and loses may obtain judicial review in several ways. First, if he is still in custody pursuant to the order, he may obtain judicial review thereof by habeas corpus proceedings. 8 U.S.C. § 1105a(a) (9). Second, whether he is in custody or not, Section 1105a(a) accords him the right to civil judicial review in the federal court of appeals for the circuit in which he resides or in which the pre-order hearings were held, provided he files a petition for review within six months of the date of the order. Section 1105a(a) (4) provides in part that

> * * * the petition shall be determined solely upon the administrative record upon which the deportation order is based and the Attorney General's findings of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive; * * *.

Third, Section 1105a(a) (6) provides that defendants in certain criminal prosecutions based on deportation orders may obtain pretrial judicial review of those orders. This section, however, limits the availability of such review to prosecutions under 8 U.S.C. §§ 1252(d) (wilful failure of deportee to comply with certain additional orders of the Attorney General prior to departure) and 1252(e) (wilful failure to arrange for departure and to depart). It does not provide for such review in prosecutions under Section 1326. Finally, Section 1105a(a) expressly provides that the foregoing procedures "shall be the sole and exclusive procedure[s] for * * * the judicial review of all final orders of deportation * * *."

The appellant here, advised by counsel at his deportation proceeding, expressly waived an administrative remedy available to him as of right, and departed from the United States having failed either to institute habeas corpus proceedings while in custody or to file a petition for judicial review in any circuit court. He appeals from conviction under 8 U.S.C. § 1326 rather than under 8 U.S.C. §§ 1252(d) or (e). As we interpret Section 1105a, this appellant may not obtain judicial review of the merits of his original deportation order in this case.

Thus we confront a problem in constitutional interpretation. In Wong Wing v. United States, 163 U.S. 228, 16 U.S. 977, 41 L.Ed. 140 (1896), the Supreme Court held that the Sixth Amendment bars the state from punishing a man for violation of a deportation statute unless

---

the Government, the Judge addressed defense counsel as follows:

THE COURT: Mr. Shukat, you will continue to represent this young man and to advise him with respect to any post-sentence motions that he may want to make and to perfect an appeal for him if that is desirable.

MR. SHUKAT: Yes, sir.

THE COURT: Mr. Shukat, you are advised that you have ten days within which to perfect an appeal in this case if you want to.

MR. SHUKAT: Yes, sir, your Honor. I understand.

The Government made no objection, and concedes in its appellate brief that *Haynes* authorizes this appeal.

"the fact of guilt [is] first * * * established by a judicial trial." 163 U. S. at 237, 16 S.Ct. at 981. In United States v. Spector, 343 U.S. 169, 72 S.Ct. 591, 96 S.Ct. 863 (1952), the Supreme Court had before it the question whether the Constitution requires that the validity of an administrative order of deportation be judicially reviewed in a criminal proceeding based thereon. The majority reserved decision. Two dissenters, Justices Jackson and Frankfurter, argued forcefully that the Sixth Amendment requires a jury trial de novo on the deportability *vel non* of the defendant. 343 U.S. at 174–180, 72 S.Ct. at 594–598. The Supreme Court has never resolved the question. None of the circuits which have considered the problem has adopted the position of the *Spector* dissenters in full.[4] The question is one of first impression in this Circuit.

We begin by noting that the appellant failed in two respects to exhaust his administrative remedies: he did not raise with the Special Inquiry Officer the factual issues he raises now, though he might have, and he did not take the administrative appeal to which the regulations clearly entitle him. Compare Falbo v. United States, 320 U.S. 549, 64 S. Ct. 346, 88 L.Ed. 305 (1944); Samala v. Immigration and Naturalization Service, 5 Cir., 1964, 336 F.2d 7.[5] We do not pause to discuss the controlling effect of the doctrine of exhaustion of administrative remedies, for we find other, stronger grounds on which to affirm this conviction.

■ We note further that the appellant received in the District Court the same kind of review of the deportation order that he would have received had he petitioned long ago under 8 U.S.C. § 1105a(a) for circuit court review. In United States v. Bowles, 3 Cir., 1964, 331 F.2d 742, rehearing denied with opinion, 334 F.2d 325, the Third Circuit held such a procedure mandatory in prosecutions under 8 U.S.C. § 1326. The District Court in the instant case commented, however, that he was simply proceeding "out of an abundance of caution," and that he did not believe that either the statute or the Constitution required review of the deportation order on its merits. We concur.

Our holding is grounded in principle on Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944). The petitioners in *Yakus* were convicted of violating the Emergency Price Control Act by wilfully selling wholesale cuts of beef at prices above the maximum prices prescribed by regulations issued by the Price Administrator. The Emergency Price Control Act provided, as the exclusive mode of review, that any person subject to a maximum price regulation might test its validity by protest to and a hearing before the Administrator, and might obtain review of any determination by the Administrator on complaint to the special Emergency Court of Appeals and by the Supreme Court on certiorari. The petitioners had not availed themselves of this procedure. At their trial they attempted nonetheless to challenge the maximum price regulation on statutory and constitutional grounds. The District Judge refused to try those issues or to submit them to the jury. The First Circuit affirmed. On certiorari, the Supreme Court held that the scheme of judicial review contemplated

---

4. See United States v. Bowles, 3 Cir., 1964, 331 F.2d 742, rehearing denied with opinion, 334 F.2d 325; United States v. Heikkinen, 7 Cir., 1957, 240 F.2d 94, rev'd on other grounds, 355 U.S. 273, 78 S.Ct. 299, 2 L.Ed.2d 264 (1958); Pena-Cabanillas v. United States, 9 Cir., 1968, 394 F.2d 785, 789 (dictum); Arriaga-Ramirez v. United States, 10 Cir., 1963, 325 F.2d 857.

5. See also McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); United States ex rel. Johnson v. Shaughnessy, 336 U.S. 806, 69 S.Ct. 921, 93 L.Ed. 1054 (1949); Gonzales v. Williams, 192 U.S. 1, 24 S.Ct. 177, 48 L.Ed. 317 (1904); 3 K. Davis, Administrative Law Treatise § 20.06 (1958); Note, Judicial Review of Final Deportation Orders, 42 N.Y.U.L.Rev. 1155, 1162–69 (1967).

in the Act neither infringed the Sixth Amendment right of the petitioners to a jury trial, nor denied them due process. Justice Stone, writing for the majority, summarized the position of the Court as follows:

> Unlike most penal statutes and regulations whose validity can be determined only by running the risk of violation * * *, the present statute provides a mode of testing the validity of a regulation by an independent administrative proceeding. There is no constitutional requirement that that test be made in one tribunal rather than in another, so long as there is an opportunity to be heard and for judicial review which satisfies the demands of due process, as is the case here. * . * * And we are pointed to no principle of law or provision of the Constitution which precludes Congress from making criminal the violation of an administrative regulation, by one who has failed to avail himself of an adequate separate procedure for the adjudication of its validity * * *.

321 U.S. at 444, 64 S.Ct. at 677.

Though *Yakus* arose and was decided in a wartime context, see United States v. England, 7 Cir., 1965, 347 F.2d 425, 442, the Supreme Court has never repudiated the fundamental principle on which the decision rests. Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L. Ed. 59 (1947), buttresses the holding in *Yakus* that the Sixth Amendment does not require that in a criminal prosecution the facts underlying an administrative order be tried de novo by a jury. Many would concede to the *Spector* dissenters that the Constitution bars Congress from wholly insulating such an order from judicial review. See United States v. England, *supra*, 347 F.2d at 430–436, and cases cited therein. But neither the scheme validated in *Yakus* nor the scheme contemplated by Title 8 of U.S.C. for enforcement of deportation orders has this defect.

There may be some circumstances in which the difference between civil judicial review at the instigation of the party subject to an administrative order, and pretrial review by the judge in a criminal proceeding instituted by the Government, takes on constitutional dimensions. We do not find such circumstances here. We note further that the dictates of *Wong Wing*, supra, must still be complied with, and that a defendant under Section 1326 who has not sought civil judicial review on the merits of his deportation order still has the right to a jury trial on other elements of the crime alleged.

We do not believe that the Constitution requires that a deported alien who fails to invoke the procedures of 8 U.S. C. § 1105a be permitted to contest the factual basis for the deportation order after he has reentered the country under a different name and been reapprehended. We hold, therefore, that 8 U.S.C. §§ 1105a and 1326, as we have interpreted them, are not unconstitutional on their face or as applied to this appellant.

Affirmed.