UNITED STATES of America,
Appellant,

v.

Jose MENDOZA–LOPEZ, Appellee.

UNITED STATES of America,
Appellant,

v.

Angel LANDEROS–QUINONES,
Appellee.

Nos. 85–1436, 85–1437.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1985.

Decided Dec. 31, 1985.
Rehearing and Rehearing En Banc
Denied March 18, 1986.

Paul D. Boeshart, Lincoln, Neb., for appellant.

Kathy Goudy, Lincoln, Neb., for appellee.

Before HEANEY, JOHN R. GIBSON and FAGG, Circuit Judges.

HEANEY, Circuit Judge.

The United States appeals from the dismissal of the indictments against two illegal immigrants in this 8 U.S.C. § 1326 proceeding. For the reasons set forth below, we affirm.

## BACKGROUND

Jose Mendoza-Lopez and Angel Landeros-Quinones were illegal immigrants from Mexico. They lived in the United States for more than seven years when they were picked up by agents of the Immigration and Naturalization Service in Nebraska. After a hearing at which they were not represented by counsel, they were deported. Six weeks after deportation, they were arrested in Lincoln, Nebraska, on charges of re-entry without authorization under 8 U.S.C. § 1326.

At trial, defendants moved to suppress evidence of their deportation. The government argued that the motion amounted to an impermissible collateral attack on deportation orders, and that, nevertheless, the defendants' constitutional rights had not been violated. The district court concluded that defendants could attack the deportation procedure and that the lack of legal counsel at the deportation hearing, combined with the defendants' inability to understand the proceedings, violated the concept of fundamental fairness. The unlawful presence charges were dismissed. On appeal, the government argues that the trial court erred by permitting the defendants to collaterally attack their deportation orders and, in any event, that the defendants were afforded due process at the deportation hearing.

## DISCUSSION

■ The Supreme Court has expressly reserved the question of whether a defendant can collaterally attack a deportation order. *United States v. Spector*, 343 U.S. 169, 72 S.Ct. 591, 96 L.Ed. 863 (1952).[1] The United States Circuit Courts which have addressed this issue are split. The more restrictive view is found in the Tenth, Fifth and Second Circuits. *See Arriaga-Ramirez v. United States*, 325 F.2d 857 (10th Cir.1963); *United States v. Gonzalez-Parra*, 438 F.2d 694 (5th Cir.1971); *United States v. Petrella*, 707 F.2d 64 (2d Cir. 1983). These Courts reason that since Congress has provided three separate avenues for appeals of administrative deportation findings, *see* 8 U.S.C. § 1105a, it intended to foreclose the possibility of collateral attack on such orders in section 1326 prosecutions. The Ninth, Third and Seventh Circuits, on the other hand, permit collateral attackes on deportation orders. *See United States v. Bowles*, 331 F.2d 742 (3rd Cir.1964); *United States v. Gasca-Kraft*, 522 F.2d 149 (9th Cir.1975); *United States v. Rosal-Aguilar*, 652 F.2d 721 (7th Cir. 1981). These Courts reason that a material element of the offense prohibited by 8 U.S.C. § 1326 is a "lawful" deportation and that, therefore, when prosecuting a section 1326 proceeding, the government must prove beyond a reasonable doubt that the defendant illegally entered the United States after being deported according to law. *Gasca-Kraft*, 522 F.2d at 152. Under this reasoning, the defendant must be able to contest the lawfulness of the deportation in the section 1326 proceeding. We agree with this rationale. Allowing a pretrial review of the underlying deportation to examine whether due process was provided insures fundamental fairness to the rights of the criminal defendant. Accordingly, we conclude that defendants in section 1326 prosecutions may collaterally attack their previous deportation orders on the ground

---

1. The government argues that the Supreme Court's intent to prohibit collateral attacks in section 1326 proceedings was made apparent in *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). In *Lewis*, the Court held that the defendant, in a prosecution for possession of a firearm by a felon, could not collaterally attack his prior conviction, even though the court assumed that the conviction was the result of an uncounseled guilty plea. The Court relied upon the language of the statute itself, noting that the prior conviction was not required to be "valid," and the statutory history, which disclosed an intent by Congress to enact "a sweeping prophylaxis, in simple terms, against misuse of firearms." *Id.*, 445 U.S. at 63, 100 S.Ct. at 920.

*Lewis* is not controlling. In *Lewis* the prior decision was judicial, not administrative. Moreover, while it can be said that Congress had a legitimate interest in prohibiting the possession of firearms by those whose brushes with the law resulted only in invalid convictions, it cannot likewise be said that Congress intended to expel from this country all aliens, even those who have a legitimate right to be here.

that they were not accorded due process at the deportation hearing.

The next question is whether the district court erred in finding a due process violation. Our review of the record reveals that the district court's conclusion is not clearly erroneous.

■ Both defendants had been continuously present in the United States for a period exceeding seven years at the time of the deportation hearing. They were therefore eligible for suspension of deportation. The Immigration Law Judge (ILJ) did not adequately inform the defendants about this alternative relief, as is required by 8 C.F.R. § 242.17(2). The defendants did not understand the consequences of the choices that they were forced to make. Had they been fully aware of such consequences, there is a substantial likelihood that the result of the hearing would have been "materially affected." Therefore, the defendants demonstrated prejudice from the ILJ's failure to fully comply with the provisions of 8 C.F.R. § 242.17. Because the defendants did not fully understand the proceedings, the hearing was fundamentally unfair, and the deportation order was obtained unlawfully. Thus, it cannot stand as a material element forming the basis of the charges against the defendants. The indictments were properly dismissed. Accordingly, we affirm.

FAGG, Circuit Judge, dissenting.

I respectfully disagree with the court's determination that an alien can attack collaterally a previous deportation order as a defense to a prosecution under 8 U.S.C. § 1326.

I would reverse the order of the district court dismissing the indictments against Mendoza-Lopez and Landeros-Quinones. In my view, aliens may not challenge deportation orders in section 1326 prosecutions because the "sole and exclusive procedure" for obtaining judicial review of deportation orders is embodied in the comprehensive review provisions of 8 U.S.C. § 1105a. Although the court gives short shrift to *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), *ante* at 112, I believe the *Lewis* analysis is indeed supportive of the government's view.

The starting point in the interpretation of any statute is the language of the statute itself. *Lewis*, 445 U.S. at 60, 100 S.Ct. at 918. Section 1326 clearly speaks only of the fact and not the quality of a previous deportation. "Any alien who—(1) has been arrested and deported * * * and thereafter (2) enters * * * the United States [without the consent of the Attorney General] shall be guilty of a felony." 8 U.S.C. § 1326. "The lack of any express reference to the validity of the deportation or of the arrest indicates that the statute seeks to punish the unauthorized reentry of an alien previously deported, regardless of whether the deportation was 'lawful.'" *United States v. Petrella*, 707 F.2d 64, 66 (2d Cir.), *cert. denied*, 464 U.S. 921, 104 S.Ct. 289, 78 L.Ed.2d 265 (1983). *Cf. Lewis*, 455 U.S. at 60, 100 S.Ct. at 918 ("No modifier is present, and nothing suggests any restriction on the scope of the term [deported].")

Despite the plain language of the statute, the court today adopts the position that a *lawful* deportation is a material element of a section 1326 offense. Although an ambiguous criminal statute should be resolved in favor of lenity, *see Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971), in the interpretation of an unambiguous statute "any principle of lenity * * * has no application." *Lewis*, 445 U.S. at 65, 100 S.Ct. at 920.

The legislative history of section 1326 is barren of any suggestion that Congress was willing to allow a defendant to question the validity of a prior deportation order in a section 1326 prosecution. *See* H.R. Rep. No. 1365, 82d Cond., 2d Sess., *reprinted in* 1952 U.S.Code Cong. & Ad. News 1653, 1724. In addition, my reading of section 1105a and its legislative history leads me to the conclusion that Congress intended to bar collateral attacks on deportation orders in prosecutions under 8 U.S.C. § 1326. Section 1105a was enacted in response to congressional concern over the inability to enforce effectively the deportation provisions of the immigration laws due to frivolous and repetitive attacks on depor-

tation orders. *See* H.R.Rep. No. 1086, 89th Cong., 1st Sess., *reprinted in* 1961 U.S. Code Cong. & Ad.News 2950, 2967. "The purpose of section 5 [of the amendment] is to create a single, separate, statutory form of judicial review of administrative orders for the deportation and exclusion of aliens from the United States, by adding a new section [1105a] to the Immigration and Nationality Act." *Id.* at 2966.

Section 1105a expressly supplies the "sole and exclusive" procedures available to aliens who have not yet departed from the United States "to obtain judicial review of all final orders of deportation." 8 U.S.C. § 1105a(a). Under the statutory framework an alien may obtain judicial review in several ways. *Cf. Lewis,* 455 U.S. at 64, 100 S.Ct. at 920 ("[I]t is important to note that an [alien ordered deported] is not without relief."). First, an alien may obtain civil review of a deportation order in the federal courts of appeals. 8 U.S.C. § 1105a(a). Second, an alien in custody may obtain habeas corpus review. 8 U.S.C. § 1105a(a)(9). Finally, aliens prosecuted under 8 U.S.C. § 1252(d) (violation of supervisory regulations) or 8 U.S.C. § 1252(e) (willful failure of an alien to depart) may challenge the validity of deportation orders in pretrial motions. 8 U.S.C. § 1105a(a)(6).

After reviewing the comprehensive scheme for judicial review that is available to aliens under section 1105a, the Second Circuit and the Fifth Circuit have concluded that aliens are not permitted to challenge deportation orders during prosecutions for unlawful reentry under section 1326. *See United States v. Petrella,* 707 F.2d at 66 ("[N]either the statute on its face nor the statutory scheme for review of deportation orders authorizes a challenge to the original deportation. We conclude, therefore, that Congress intended to bar collateral attacks in § 1326 prosecutions."); *United States v. Gonzalez-Parra,* 438 F.2d 694, 697 (5th Cir.) ("We think it clear that Congress intended to bar collateral attacks on deportation orders in prosecutions under 8 U.S.C. § 1326."), *cert. denied,* 402 U.S. 1010, 91 S.Ct. 2196, 29 L.Ed.2d 433 (1971).

Nor do I see any constitutional impediment to the view expressed in this dissent.

First, the focus of section 1326 on the mere fact of deportation and unlawful reentry is rational in light of the congressional purpose to streamline judicial review of deportation orders. Second, the statutory scheme does provide a comprehensive, albeit exclusive, format for judicial review of deportation orders. Therefore, an alien subject to deportation has an opportunity outside of section 1326 to challenge the validity of the order. *See Lewis,* 455 U.S. at 65–67, 100 S.Ct. at 920–22; *see also United States v. De La Cruz-Sepulveda,* 656 F.2d 1129, 1132 (5th Cir.1981).

Because section 1105a provides the "sole and exclusive" method for obtaining judicial review of deportation orders, I would hold that an alien may not challenge a deportation order in his section 1326 prosecution. Therefore, I would reverse the district court's dismissal of the indictments against Mendoza-Lopez and Landeros-Quinones.