**Carlos MARCELLO, Plaintiff-Appellant,**

**v.**

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant-Appellee.**

**No. 86-3338**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Nov. 3, 1986.

Mark A. Mancini, Washington, D.C., for plaintiff-appellant.

John Volz, U.S. Atty., Nancy Nungesser, Asst. U.S. Atty., New Orleans, La., Patrick A. Hudson, Principal Regional Counsel, Social, Valerie Olds, Atty., Security Disability Litigation Branch, Dept. of Health & Human Services, Dallas, Tex., for defendant-appellee.

Before ALVIN B. RUBIN, RANDALL and PATRICK E. HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Plaintiff appeals from the judgment of the district court granting defendant's motion for summary judgment and dismissing plaintiff's complaint. We affirm.

## I.

Appellant, Carlos Marcello, was brought to the United States as a baby and admitted as a legal resident in 1910. In 1938, Marcello was convicted of violating the Marihuana Tax Act, 26 U.S.C. § 2591. At that time, such a violation was not a ground for deportation but § 241(a)(11) of the 1952 Immigration and Nationality Act (INA), 8 U.S.C. § 1251(a)(11), made such conviction at any time a ground for deportation.[1] Proceedings to effect Marcello's deportation were brought by the government based on the aforementioned conviction, and an order of deportation was issued. The order of deportation was appealed administratively. After Marcello had exhausted his administrative remedies, he brought an action for a writ of habeas corpus challenging the validity of the deportation order on various grounds. The district court held that the deportation order was valid and discharged the writ. *United States* ex rel. *Marcello v Ahrens*, 113 F.Supp. 22 (E.D.La.1953). The Court of Appeals and the United States Supreme Court affirmed. *See Marcello v. Bonds*, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955) (affirming *Marcello v. Ahrens*, 212 F.2d 830 (5th Cir.1954)).

Six months after the Supreme Court found that Marcello was a deportable alien, Marcello became an alien subject to supervision under 8 U.S.C. § 1252(d).[2] The terms of Marcello's order of supervision included travel restrictions and reporting requirements. Marcello's attorney objected that there was no kind of notice provision regarding the effectuation of Marcello's deportation; he wanted several days' notice of a pending physical removal of Marcello from the United States. The Immigration and Naturalization Service (INS) considered that objection, among others, and issued a modified order of supervision in May, 1956. In its letter of explanation to Marcello's attorney, the INS stated that there was no three-day notice provision required of them and no such provision was included in the order of supervision. On April 4, 1961, when Marcello reported to the INS under the terms of his order of supervision, he was deported to Guatemala. Five or six weeks later Marcello reentered the United States without being lawfully admitted. Following Marcello's deportation, the Social Security Administration received a Form I–157, Notice of Deportation, from the INS, stating that Marcello was deported to Guatemala on April 4, 1961. The Social Security Administration has never received from the INS a Form G–337, Notice of Lawful Reentry After Deportation, concerning Marcello.

---

1. Section 241(d), 8 U.S.C. § 1251(d), made the provisions of § 241(a) retroactive.

2. 8 U.S.C. § 1252(d) provides that: "Any alien, against whom a final order of deportation ... has been outstanding for more than six months, shall, pending his eventual deportation, be subject to supervision ... prescribed by the Attorney General."

Marcello filed his application for retirement insurance benefits on February 14, 1975. The Social Security Administration found initially and on reconsideration that Marcello had been deported to Guatemala on April 4, 1961, and that he had never thereafter been lawfully admitted to the United States for permanent residence. Therefore, pursuant to § 202(n) of the Social Security Act (SSA), 42 U.S.C. § 402(n), Marcello was not entitled to retirement insurance benefits.

A hearing *de novo* before an administrative law judge (ALJ) was held on May 22, 1984. The ALJ, in its August 30, 1984, decision, found that Marcello was not entitled to retirement insurance benefits under the SSA. The Appeals Council denied Marcello's request for review of the hearing decision. The ALJ decision therefore became the final decision of the Secretary.

On March 28, 1986, the District Court for the Eastern District of Louisiana, with a United States Magistrate presiding by consent of the parties under 28 U.S.C. § 636(c), entered judgment in favor of the Secretary and dismissed Marcello's complaint. The court found that it could not reach the issue of whether Marcello's deportation was illegally executed and that the Secretary was entitled to rely, in denying benefits under § 202(n), upon the Notice of Deportation sent by the INS. Consequently, the district court found that there was substantial evidence to support the Secretary's decision that, under § 202(n), retirement insurance benefits were not payable to Marcello. This appeal followed.

## II.

Under 42 U.S.C. § 405(g), a court reviewing a decision of the Secretary is limited to determining whether there was substantial evidence in the record as a whole to support the decision.[3] The court cannot reweigh the evidence or substitute its judgment for that of the Secretary. *See, e.g., Cook v. Heckler,* 750 F.2d 391, 392 (5th Cir.1985); *Jones v. Heckler,* 702 F.2d 616, 620 (5th Cir.1983). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jones,* 702 F.2d at 620. Summary judgment is a proper vehicle for weighing such a decision of the Secretary. *See Thomas v. Schweiker,* 666 F.2d 999, 1001 n. 2 (5th Cir.1982). If the Secretary's decision is supported by substantial evidence, the findings are conclusive and must be affirmed. *See Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct., 1420, 1422, 28 L.Ed.2d 842 (1971).

The district court, in reviewing the decision of the ALJ, noted that the proceeding before the district court was limited to judicial review of the Secretary's determination relative to the entitlement to Social Security benefits, and that in its review, the court was limited to the consideration of the pleadings and evidence contained in the administrative record. *See* 42 U.S.C. § 405(g). In that regard, the court noted that a Social Security proceeding is conducted without the participation of the Attorney General or the INS and that the proceeding does not afford to any part of the federal government the opportunity to present evidence, other than a Notice of Deportation, on the issues raised. Therefore, reasoned the district court, "an application for Social Security benefits and the procedures provided by statute to contest the denial of such benefits are not the appropriate means by which to initially challenge the legality of the execution of a deportation." *Marcello v. Heckler,* E.D. La.1986). The court went on to note that:

a decision as to lawfulness of a deportation may have collateral estoppel effects which reach far beyond the question of Social Security benefits. The resolution

---

**3.** This standard of review is the same in both the district court and the court of appeals. Where the "appeal is taken from a district court's rendition of summary judgment in favor of the Secretary, the circuit court's review must be made independently of the determinations

made by the district court, and without the assumption that the district court acted correctly." *Thomas v. Schweiker,* 666 F.2d 999, 1001 n. 2 (5th Cir.1982) (citing *Olson v. Schweiker,* 663 F.2d 593 (5th Cir.1981)).

of the deportation issue should, therefore, be based on a fully and fairly developed factual record in the proper case with proper parties. Absent a final decision in such a case that a deportation was invalid and restoring the claimant to the status held prior to the deportation, the Secretary of Health and Human Services must be able to rely on information received from the INS which indicates that the claimant has, in fact, been deported and the Court in reviewing the Secretary's decision pursuant to 42 U.S.C. § 405(g) must affirm that decision if supported by substantial evidence.

*Id.* Since the district court found that it could not reach Marcello's claim that the deportation was illegally executed, and after reviewing the administrative record, the court found that the Secretary is entitled to rely on the Notice of Deportation. Consequently, the court found that there was substantial evidence to support the Secretary's decision that retirement benefits were not payable to Marcello under § 202(n). The district court stated that the evidence clearly established that, on April 4, 1961, Marcello was under an order of deportation pursuant to 8 U.S.C. § 1251(a)(11), and that the validity of the order had been upheld by the United States Supreme Court in *Marcello v. Bonds*, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107. Further, there was substantial evidence that Marcello was, in fact, deported to Guatemala on April 4, 1961, pursuant to the valid order of deportation. Finally, Marcello stipulated at the administrative hearing that there was no evidence that he had been lawfully admitted to the United States for permanent residence since his removal to Guatemala in 1961.

Marcello contends that the district court erred in finding that the Secretary is entitled to rely upon the Notice of Deportation. Relieving the Secretary of responsibility to consider circumstances other than the fact or notice of deportation is, according to Marcello, at odds with the purposes of § 202(n). He argues that an unlawfully executed deportation, even if pursuant to a valid deportation order, is not a deportation as contemplated by § 241 of the INA, 8 U.S.C. § 1251(a).[4] In Marcello's view, the term "deported" in § 202(n) must be interpreted as recognizing the difference between an illegal deportation and a legal deportation. To adhere to the district court's conclusion that the Secretary can rely on the Notice of Deportation would, according to Marcello "impute[ ] upon Congress an intent to breathe a meaning into the term 'deported' that disregards the difference between illegal deportation and legal deportation." According to Marcello, the Notice of Deportation is strictly a ministerial act, issued irrespective of the legality of the execution of the deportation order. Thus, according to Marcello, it bears little, if any, weight on the issue of whether a person has been "deported," and it does not alone constitute substantial evidence of deportation. Further, he argues that the district court's decision that he could not attack the legality of his deportation in the context of this Social Security proceeding was contrary to law and was an abuse of his right to fundamental fairness.

### III.

Section 202(n) of the SSA provides, in relevant part, that:

> regulation governing or controlling the taxing, manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, exportation, or the possession for the purpose of the manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, or exportation of opium, coca leaves, heroin, marihuana, any salt derivative or preparation of opium or coca leaves or isonipecaine or any addiction-forming or addiction-sustaining opiate; 8 U.S.C. § 1251(a)(11).

4. Section 1251 provides, in relevant part, that:
(a) Any alien in the United States ... shall, upon the order of the Attorney General, be deported who—

. . . . .

(11) is, or hereafter at any time after entry has been, a narcotic drug addict, or who at any time has been convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana, or who has been convicted of a violation of, or a conspiracy to violate, any law or

(1) If any individual is ... deported under paragraph (1), (2), (4), (5), (6), (7), (10), (11), (12), (14), (15), (16), (17), or (18) of section 1251(a) of Title 8 [§ 241(a) of the INA] then, notwithstanding any other provisions of this subchapter—

(A) no monthly benefit under this section or section 423 of this title shall be paid to such individual, on the basis of his wages and self-employment income, for any month occuring (i) after the month in which the Secretary is notified by the Attorney General that such individual has been so deported, and (ii) before the month in which such individual is thereafter lawfully admitted to the United States for permanent residence....

(2) As soon as practicable after the deportation of any individual under any of the paragraphs of section 1251(a) of Title 8 enumerated in paragraph (1) in this subsection, the Attorney General shall notify the Secretary of such deportation.

42 U.S.C. § 402(n). Section 241(a) provides for the deportation, upon the order of the Attorney General, of any alien who at any time has been convicted of violating a drug-related law or regulation.

■ In addressing questions under § 202(n), the Secretary does not, and by his own policy statements must not, look behind the Notice of Deportation to the circumstances surrounding its issuance. The Social Security Act directs the Secretary to "adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same" with respect to claims for benefits under title II and title XVI of the SSA. 42 U.S.C. §§ 405(a) and 1383(d)(1). Congress has conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the SSA. *Schweiker v. Gray*

*Panthers*, 453 U.S. 34, 43, 101 S.Ct. 2633, 2639, 69 L.Ed.2d 460 (1981). Where the statute expressly entrusts the Secretary with the responsibility for implementing a provision of the Act by regulation, judicial review is limited to determining whether the regulations promulgated exceed the Secretary's statutory authority and whether they are arbitrary and capricious. *Heckler v. Campbell*, 461 U.S. 458, 466, 103 S.Ct. 1952, 1956, 76 L.Ed.2d 66 (1983). Moreover, the courts defer to an agency's interpretation of its own regulations. *E.I. DuPont de Nemours & Co. v. Collins*, 432 U.S. 46, 54–55, 97 S.Ct. 2229, 2234, 53 L.Ed.2d 100 (1977). Courts accept the agency's interpretation if it is reasonable in terms of the words of the regulations and the purposes of the statute, even though, as an original matter, the court might have reached a different conclusion. *Deters v. Secretary of Health, Educ. & Welfare*, 789 F.2d 1181, 1184 (5th Cir.1986); *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir.1984).

■ The Secretary's own regulations provide that:

(a) *Old-age or disability insurance benefits.* When an individual is deported (after September 1, 1954) under the provisions of paragraph (1), (2), (4), (5), (6), (7), (10), (11), (12), (14), (15), (16), (17), or (18), of section 241(a) of the Immigration and Nationality Act, no old-age or disability insurance benefit is payable to the individual for any month occurring after the month in which the Administration is *notified* by the Attorney General of the United States that the individual has been deported ...

20 C.F.R. 404.464 (emphasis added). Thus, once the Attorney General *notifies* the Secretary that a person was deported under one of the listed sections of the INA, suspension of benefits is automatic.

The Program Operations Manual System (POMS) of the Social Security Administration[5] evinces that the Secretary's review of

---

**5.** The Program Operations Manual System does not change existing policy, law, or regulation. It clarifies general terms of the Social Security

Act and regulations. *See Powderly v. Schweiker* 704 F.2d 1092, 1096–98 (9th Cir.1983).

a deportation rests on the objective information contained in the I-157 form. Section RS-02635.005 of the POMS provides:

> Form 1-157 (Notice of Deportation) ... will be sent by the ... Immigration and Naturalization Service ... whenever a person is deported.
>
> *This form contains the basic information with which SSA is concerned, namely identification of the individual ... and the cause and date of deportation.* The date, which must be after September 1, 1954, is the month of actual deportation, as distinguished from the month in which the order of deportation was issued. Under the item "Final Charge," INS gives the reason for deportation, usually by designating the paragraph of Section 241(a) of the Immigration and Nationality Act under which deportation was effected.

(emphasis added).

In the Cumulative Bulletin of Social Security Rulings compiled by the Agency, the Secretary has stated his inability to use any evidence besides the Form I-157 in determining whether a person was deported for purposes of the SSA. That ruling, SSR 78-29, deals with the question of whether a wage earner's benefit payments may be resumed under § 202(n) of the SSA if the INS (after having sent a Notice of Deportation concerning the wage earner) subsequently advises that his deportation order was never executed. After quoting from § 202(n) the ruling states:

> It would appear on the basis of the foregoing provisions that payment of benefits to an individual would be precluded under section 202(n) if two conditions exist: (1) the individual has been deported under the Immigration and Nationality Act and (2) the Secretary has been notified by the Attorney General that the individual has been so deported. *With respect to the first condition, the Social Security Administration is not empowered under section 202(n) of the Social Security Act to make independent findings as to whether an individual has*

*been deported, but must accept the statement from the Immigration and Naturalization Service that the individual has been deported under a specified provision of the Immigration and Nationality Act.* Nevertheless, when a question arises concerning the substance or effect of the notice from the Immigration and Naturalization Service, SSA would not be precluded from contacting the Immigration and Naturalization Service and developing further with them the question of the wage earner's deportation.

> In the instant case, the letter from the Immigration and Naturalization Service dated April 24, 1974, raises a serious question as to whether the wage earner was deported under the Immigration and Nationality Act. It appears from the letter the wage earner did not physically depart from the United States under an effective, final order of deportation. Therefore, additional development with the Immigration and Naturalization Service would be necessary to determine if the original notice of deportation correctly reflected the occurrence of the wage earner's deportation. If as a result of such development the Immigration and Naturalization Services advises SSA that the wage earner has not been deported, SSA may reopen its initial determination to stop payment under section 404.957 of Social Security Administration Regulation No. 4. *If, on the other hand, the Immigration and Naturalization Service states that the individual was deported under section 241(a) of the Immigration and Nationality Act as indicated in the original notice, then benefits may be resumed only under the criteria prescribed in section 202(n)(1), i.e., in the event the individual is thereafter lawfully admitted to the United States for permanent residence.*

*Cumulative Bulletin of SSR's,* SSR 78-29, at 44-45 (emphasis added).[6]

Therefore, the Secretary, by his own regulations, which we find to be within his statutory authority and which are not arbi-

---

**6.** Marcello contends that the Secretary should have sought additional development here.

However, in the present case, there is no question that Marcello physically departed from the

trary and capricious, relies on the Notice of Deportation in making § 202(n) determinations. This is as it should be. As the district court properly recognized in concluding that Marcello could not attack the legality of his deportation in the context of his action challenging the denial of Social Security benefits, Social Security proceedings are limited in scope and are not appropriate fora to challenge the legality of the execution of a deportation order. Moreover, given the fact that a decision on the lawfulness of a deportation could arguably have effects reaching far beyond the social security proceedings, *see, e.g., United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966), the district court's conclusion is all the more justifiable.[7]

We note in this regard that "[t]he federal immigration laws are exceedingly complex." *Local 512, Warehouse & Office Workers v. NLRB*, 795 F.2d 705, 721 (9th Cir.1986). The INA establishes a comprehensive scheme and provides the basis for admission or exclusion of aliens from the United States. *See* 8 U.S.C. §§ 1101–1503. Administration of the INA is primarily the responsibility of the Attorney General. *See* 8 U.S.C. § 1103; *see also Local 512*, 795 F.2d at 721; *Dong Sik Kwon v. INS*, 646 F.2d 909, 911 (5th Cir.1981). Deportation proceedings are within the exclusive control of the INS and the Attorney General. *See Kiron*, 646 F.2d at 915–16; *Local 512*, 795 F.2d at 721. Determination of immigration matters, then, is not the responsibility of those charged with the task of administering the Social Security system and is not appropriate in the context of an

action challenging the denial of Social Security benefits. *Cf. Local 512*, 795 F.2d at 721. Accordingly, since an attack on the legality of the deportation is not appropriate in a Social Security proceeding, the Secretary must be able to rely on the Notice of Deportation in making a § 202(n) determination.

### IV.

Because we find that there was substantial evidence to support the Secretary's decision that Marcello is not entitled to payment of Social Security benefits, the judgment of the district court is

AFFIRMED.

United States under an effective, final order of deportation. Marcello testified that he physically left the United States and went to Guatemala pursuant to that order. Marcello further conceded that he has never been thereafter lawfully admitted to the United States for permanent residence. Consequently, no further development would have been justified.

7. Marcello relies on *United States v. Mendoza-Lopez*, 781 F.2d 111 (8th Cir.1985) in arguing that he should have been allowed to attack the legality of his deportation. *Mendoza-Lopez* involved an alleged violation of 8 U.S.C. § 1326 which makes it a criminal offense for deported aliens to reenter the United States without au-

thorization. In that case, the Eighth Circuit allowed the defendants to collaterally attack their deportation orders on the ground that they were denied due process at the deportation hearing. We must reject Marcello's argument for two reasons. First, unlike the § 1326 action at issue in *Mendoza-Lopez,* this is not a criminal proceeding. Second, this circuit has not allowed collateral attacks of deportation orders, even in the § 1326 context. *See United States v. De La Cruz-Sepulveda*, 656 F.2d 1129 (5th Cir. 1981); *United States v. Gonzalez-Parra*, 438 F.2d 694 (5th Cir.), *cert. denied,* 402 U.S. 1010, 91 S.Ct. 2196, 29 L.Ed.2d 433 (1971).