**UNITED STATES of America,**

v.

**Ruben GALLEGOS–COSIO, Defendant.**

**No. 04–CR–19 (HGM).**

United States District Court,
N.D. New York.

March 29, 2005.

Glenn T. Suddaby, United States Attorney for the Northern District of New York (Ransom P. Reynolds, III, Assistant United States Attorney, of Counsel), Syracuse, NY, for Plaintiff.

Ruben Gallegos–Cosio, NY, pro se.

Alexander Bunin,* Federal Public Defender for the Districts of Northern New York and Vermont, (James F. Greenwald,* Assistant Federal Public Defender, of Counsel), Robert G. Wells, Esq.,* Syracuse, NY, for Defendant

## MEMORANDUM—DECISION AND ORDER

MUNSON, Senior District Judge.

Currently before the court is defendant's motion to dismiss the Indictment.

---

* The court initially assigned the Office of the Federal Public Defender to represent defendant in this matter. *See* Dkt. No. 3, Order. Apparently dissatisfied with this representation, defendant subsequently sought to obtain new counsel. *See* Dkt. No. 26, Minute Entry; Dkt. No. 29, Greenwald Letter. The docket indicates James F. Greenwald, Esq. was terminated as counsel on September 15, 2004. Acting upon information that defendant was unable to secure new representation, pursuant to the Criminal Justice Act, the court assigned Robert G. Wells, Esq. to represent him. Soon thereafter, Mr. Wells reported to the court that defendant had rejected his representation as well, and Mr. Wells was terminated as counsel on November 2, 2004. *See* Dkt. No. 33, Wells Letter and Dkt. No. 31, Wells Letter.

The Government opposes defendant's motion. For the reasons set forth below, the court DENIES defendant's motion and orders the parties to appear for trial on Monday April 4, 2005, in Syracuse, New York at 10:00 a.m.

## BACKGROUND

### I. The Indictment and Defendant's Legal Representation

On December 20, 2003, the New York State Police ("Police") arrested defendant, Ruben Gallegos–Cosio, in Onondaga County. The Police contacted the Fulton, New York station of the United States Border Patrol ("Border Patrol") and reported defendant's arrest. A Special Agent of the Border Patrol reviewed defendant's immigration records and subsequently filed a criminal complaint against defendant in the United States District Court for the Northern District of New York. *See* Dkt. No. 1, Criminal Compl. On January 15, 2004, the Government charged that defendant violated 8 U.S.C. §§ 1326(a) and (b)(2). The Government charged that defendant, as an alien having been previously removed from the United States following his conviction for an aggravated felony, had illegally reentered the United States "without having obtained the consent of the United States Attorney General, or his successor, the Secretary for Homeland Security." Dkt. No. 9, Indictment. The Grand Jury thereafter returned the single-count Indictment against defendant. Finding that defendant was financially unable to employ counsel and did not wish to waive his right to counsel, the court assigned the Office of the Federal Public Defender to represent him. *See* Dkt. No. 3, Order. On July 26, 2004, the day his trial was scheduled to commence, defendant requested the opportunity to obtain new counsel, and the court ordered defendant to retain counsel as soon as possible

and adjourned the trial until September 13, 2004. *See* Dkt. No. 26, Minute Entry. Acting upon information that defendant was unable to secure new representation, pursuant to the Criminal Justice Act, the court assigned Robert G. Wells, Esq. to represent him. *See* Dkt. No. 29, Greenwald Letter. Soon thereafter, Mr. Wells reported to the court that defendant had rejected his representation and discharged him as counsel. Mr. Wells advised that defendant would be proceeding *pro se* and that he would refuse further visits from counsel, *see* Dkt. No. 31, Wells Letter and Dkt. No. 33, Wells Letter, but before the court terminated Mr. Wells as counsel on November 2, 2004, he filed a motion to dismiss the Indictment. Dkt. No. 32, Mot. to Dismiss. Therein, defendant contested the validity of his 1991 deportation hearing arguing that the Immigration Judge ("IJ") may never have informed him of his right to seek discretionary relief from deportation pursuant to former Section 212(c) of the Immigration and Naturalization Act ("INA"), as amended 8 U.S.C. § 1101 *et seq.* In seeking to oppose defendant's motion, the Government, pursuant to 18 U.S.C. § 3161(h)(1)(F), requested additional time to obtain transcripts of defendant's 1991 deportation hearing and to prepare a response.

### II. Defendant's Criminal History and Deportations

#### A. Criminal History

On October 23, 1965, defendant, a native and citizen of Mexico, entered the United States via the Port of Entry at San Ysidro, California as an immigrant. On July 2, 1982, defendant was convicted in the Municipal Court of California, County of San Diego, for the felony offense of the Unlawful Possession of Heroin for Sale. On September 9, 1982, defendant was convicted in the Superior Court of California, San Die-

go County, for the felony offense of Forgery. On September 9, 1987, defendant was convicted in the Superior Court of California, County of San Diego, for the felony offense of Burglary in the First Degree. After serving a three year state prison sentence for the Burglary conviction, defendant was released on parole. *See* Dkt. No. 35, Gov't.'s Mem. of Law at 1, Ex. 1.

### B. Deportations

On December 22, 1991, defendant was taken into custody for a violation of parole and/or immigration warrant. Pursuant to Section 241(a)(2)(A)(ii) of the INA, the Immigration and Naturalization Service initiated a deportation proceeding against defendant because he had been "convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct." *Id.* Defendant appeared before IJ Michael Bennett at a hearing in which the IJ and defendant engaged in the following colloquy:

> IJ: You appear to be eligible to apply for a waiver, sometimes commonly referred to as a pardon to keep your green card. If you wanted to do that, I'd reconsider your bond, although it wouldn't be .... Unfortunately, I've finished for the week and I won't be here next week, but you could have your bond reconsidered to see if it might be lowered and the opportunity to apply .... to keep your green card. Do you understand that? If you don't apply and you are deported, you will lose your green card forever because of the conviction. Do you understand that?

Defendant: Yes, sir.

IJ: Do you want to make an application?

Defendant: No, I don't.

IJ: Okay, we already had you hear [sic] once before and you said that you didn't want to apply for the waiver/the pardon, correct? You haven't changed your mind since we last spoke this morning?

Defendant: No.

IJ: I'm ordering your deportation to Mexico. Do you accept that or do you wish to appeal?

Defendant: I accept.

Dkt. No. 35, Ex. 3, Tr. of Hr.g.[1] In addition to the transcript, the Government also submitted a summary of the December 22, 1991 hearing, which indicates that defendant: (1) did not "want to apply for 212(c) nor pursue USC claim"; (2) "waived USC + 212(c) rights"; and (3) waived his appeal. Dkt. No. 35, Ex. 2. On December 27, 1991, defendant was deported from El Centro, California. Dkt. No. 1, Criminal Compl.

Defendant was again removed pursuant to an order of deportation on or about October 17, 1998. *See* Dkt. No. 35, Gov't.'s Mem. of Law at 2. In addition, the Border Patrol's review of defendant's alien file revealed a copy of a warrant of removal/deportation dated July 11, 2002, *see* Dkt. No. 1, Criminal Compl., and the Government submits that a third order of deportation was issued against defendant on August 23, 2002. *See* Dkt. No. 35, Gov't.'s Mem. of Law at 2.

---

1. The court notes that the double negative in the second to last exchange was left uncorrected on the record and might suggest that defendant wanted to apply for the waiver, but when read in context with the previous exchange and the summary of the hearing, *infra*, the court concludes that defendant had not changed his mind as to his declining to make such an application.

## DISCUSSION

As relevant here, under the INA, it is a crime for a deported or removed alien to enter, attempt to enter, or be found in the United States, "unless prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission." 8 U.S.C. § 1326(a). Furthermore, an alien "whose removal was subsequent to a conviction for commission of an aggravated felony ... shall be fined ..., imprisoned not more than 20 years, or both." 8 U.S.C. § 1326(b)(2). "An alien can defend against such a charge by challenging the validity of the deportation order upon which the charge is predicated." *United States v. Copeland,* 376 F.3d 61, 66 (2d Cir.2004). The United States Supreme Court has held that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." *United States v. Mendoza–Lopez,* 481 U.S. 828, 837–38, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). Congress adopted the Court's holding as its own, codifying it at 8 U.S.C. § 1326(d), *see United States v. Scott,* 394 F.3d 111, 116 (2d Cir.2005); *United States v. Johnson,* 391 F.3d 67, 74 (2d Cir.2004) ("Section 1326(d)(1) is ... wholly consistent with the dictates of *Mendoza–Lopez.*"), which provides:

> In a criminal proceeding [for illegal reentry], an alien may not challenge the validity of the deportation order ... unless the alien demonstrates that (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.

Because § 1326(d) is conjunctive, a defendant must satisfy all three of its provisions before he may wage a collateral attack.

## I. Exhaustion of Administrative Remedies

 "A failure to exhaust administrative remedies bars collateral review of a deportation proceeding under Section 1326(d)(1) ... where an alien's waiver of administrative review was knowing and intelligent." *United States v. Sosa,* 387 F.3d 131, 137 (2d Cir.2004). "[A]n alien's failure to meet the requirement of § 1326(d)(1) would be excusable where the alien waived the right to a [Board of Immigration Appeals] appeal and the waiver was premised on misleading information provided by the IJ regarding the alien's eligibility for discretionary relief." *Johnson,* 391 F.3d at 75.

Here, while defendant concludes, without more, that he "exhausted his administrative remedies," Dkt. No. 32, Def.'s Mem. of Law at ¶ 13, the Government asserts that the IJ explained defendant's appellate rights and his rights under § 212(c) "in clear and simple language." Dkt. No. 35, Gov't.'s Mem. of Law at 4. At the time of defendant's deportation hearing, aliens deportable under the INA could apply to the Attorney General for a discretionary waiver of deportation pursuant to § 212(c) of the INA. To qualify for such relief, an alien was required to show that he: (1) was a lawful permanent resident of the United States; (2) had an unrelinquished domicile of seven consecutive years; and (3) had not committed an aggravated felony for which he had served a term of at least five years. *See* 8 U.S.C. § 1182(c) (1994). "If the alien met these requirements, the Attorney General had the discretion to waive deportation." *Ran-*

*kine v. Reno,* 319 F.3d 93, 95 (2d Cir.2003); *see also Copeland,* 376 F.3d at 64.

As demonstrated by the transcript and summary of defendant's deportation hearing, the IJ informed defendant that he was eligible to seek discretionary relief from deportation under former § 212(c) of the INA, and defendant waived his right to seek such relief. Although not specifically referencing § 212(c) while addressing defendant, the IJ advised him of its substance asking if he understood that he "appear[ed] to be eligible to apply for a waiver" and noting that he "could have [his] bond reconsidered to see if it might be lowered and the opportunity to apply .... to keep [his] green card." Dkt. No. 35, Ex. 3 Tr. of Hr'g. Defendant responded and indicated that he understood. *Id.* Furthermore, the IJ asked defendant if he wanted to make such an application and defendant replied that he did not. *Id.* Similarly, the summary of defendant's hearing indicates that defendant: (1) did not "want to apply for 212(c) nor pursue USC claim"; (2) "waived USC + 212(c) rights"; and (3) waived his appeal. Dkt. No. 35, Ex. 2.

Finding the IJ's explanation facially adequate as to defendant's right to administrative appeal, without more, the court finds defendant's waiver of such right knowing and intelligent. Therefore, defendant has failed to demonstrate that he "exhausted any administrative remedies that may have been available to seek relief against the order." 8 U.S.C. § 1326(d)(1).

## II. Opportunity for Judicial Review

 Even if the court were to conclude that defendant's waiver was not knowing and intelligent, his collateral challenge would still fail because he has not shown that his deportation proceedings improperly deprived him of the opportunity for judicial review. An alien is denied the opportunity for judicial review, for example, "if the IJ does not adequately inform him of his right to a direct appeal from a deportation order." *Copeland,* 376 F.3d at 67 (citing *Mendoza–Lopez,* 481 U.S. at 840, 107 S.Ct. 2148). By regulation, 8 C.F.R. § 242.19(b), the IJ must inform the alien "of his right to appeal from the deportation order; but there is no statute or regulation prescribing that he be told anything more if he says on the spot that he does not wish to appeal." *United States v. Loaisiga,* 104 F.3d 484, 487 (1st Cir.1997).

Here, while defendant concludes, without more, that he was "denied judicial relief," Dkt. No 32, Def.'s Mem. of Law at ¶ 13, the Government maintains that the IJ explained defendant's appellate rights. *See* Dkt. No. 35, Gov't.'s Mem. of Law at 5. The IJ asked defendant if he "wish[ed] to appeal" his deportation order and he declined, responding that he accepted the IJ's order of deportation. *See* Dkt. No 35, Ex. 3 Tr. of Hr'g. As with defendant's waiver of his right to an administrative appeal, the court finds nothing to suggest that defendant's decision to accept rather than to appeal the IJ's order of deportation was anything but knowing and intelligent. Therefore, defendant has failed to demonstrate that the "the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review." 8 U.S.C. § 1326(d)(2).

## III. Fundamental Unfairness

 Under Section 1326(d)(3), an alien must show that his deportation proceeding was "fundamentally unfair." To show fundamental unfairness, a defendant "must show both a fundamental procedural error and prejudice resulting from that error." *United States v. Fernandez–Antonia,* 278 F.3d 150, 159 (2d Cir.2002). Accordingly, to show fundamental unfairness,

an "alien must show not only that he was denied direct judicial review, but also that he was somehow prejudiced by that denial of judicial review." *United States v. Sanchez–Peralta*, 1998 WL 63405 at *12 (S.D.N.Y.1998). Here, defendant concludes that he was "denied fundamental fairness in the deportation proceeding," Dkt. No. 32, Def.'s Mem. of Law at ¶ 13; however, because defendant was not denied judicial review, he cannot show that his deportation proceeding was fundamentally unfair.

Defendant has failed to show that: (1) he exhausted his administrative remedies; (2) the administrative hearing improperly deprived him of the opportunity for judicial review; and (3) the entry of the order of deportation was fundamentally unfair.

## CONCLUSION

**WHEREFORE,** after careful consideration of the parties' submissions, the court hereby

**DENIES** Ruben Gallegos–Cosio's motion to dismiss the indictment; the court further

**ORDERS** the parties to appear for a trial calendar call on Monday April 4, 2005, in Syracuse, New York at 2:00 p.m. at which time the court and the parties will determine further proceedings; the court further

**ORDERS** an attorney from the Office of the Federal Public Defender to be present at the trial calendar call.

**IT IS SO ORDERED.**